And, uh, there's Osmond is represented by Mr Corbett. Good to have you with us, Mr Corbett. Thank you, Your Honor. I appreciate that. It's good to be back here. I actually had the honor last time of being the first group to shake the hands of the panel after Covid. So I think it's only fitting that I missed the opportunity this time. Um, may it please the court, though, when a district judge is acting as finder of fact, Rule 52 requires them to be specific when they make those findings. So when a party's testimony is found to be not credible in its entirety, we'd expect that that heavy, truly dispositive finding to be fully explained. And the only explanation we got from the court below, uh, essentially finding that my client invented her claim entirely that she was inappropriately touched by a TSA screener was that she would not admit to remembering social media posts that they surprised her with the trial that she supposedly made over a decade earlier, containing a mundane gripe about TSA. Now, that's obviously too thin of a reason to treat everything else that someone says under oath as a fabrication that that would be clear error. But it begs the question, Okay, what? What did motivate the district judge to make such a fine? And I'd submit that implicit bias, the idea that whether we want to admit it or not, we all prejudge things subconsciously and often unfairly is so impactful on the legal practice that there are emcee Lee courses on the topic. And in part due to social progress in the last decade, I'd like to believe that it's common sentiment in 2026 that it would be unfair to say that someone who has been sexually assaulted in the past is less credible if they allege sexual assault in the future. Implicit bias, maybe, but we probably wouldn't say that, except defense counsel did say it in their close that Mrs Osmond's prior assault quote contributed to plaintiff's erroneous perception of what happened. I'm sorry of what occurred her erroneous perception of how she was being touched. So the district judge didn't specifically said he wasn't making a finding as to whether or not that prior experience of the plaintiff contributed to her perception or not, perhaps because he knows that that would be unfair, or perhaps because he knows that that would also be clear error under empori's 402 and 403. But there's good reason to doubt counsel. So what exactly are you arguing? Is it the error here? The error here is that under Rule 52, the court is required to explain its findings of fact. The court said that my client was not credible because she didn't remember a 12 year old tweet that she made, that she was surprised with in court for the first time, not during a deposition, and because she wouldn't say, I remember making that, that everything else she said was not true, that she made up the entire claim, she made up the words that she said that this TSA screener said to her while she was being touched. She made up how she was being touched, all because she wouldn't admit to remembering making a post that a reasonable person might not remember making. I certainly don't remember... Mr. Corbett, you just said something that struck me as wrong, and I just checked. You said the district court not only has to make findings of fact, but the district court has to explain why it makes its findings of fact, and you represented that Rule 52 says that. Where does Rule 52 say that? I'm looking at it, it's 52A1. It says that the district court has to make... Must state the facts specifically and state its conclusions of law separately. I am not seeing where it says the district court has to say why I decided someone wasn't credible. Where does it say that? Yeah, and that's a fair point, but the court did decide to say why. I know, but you said the district court violated Rule 52 by not adequately explaining why it made the factual findings it did, and I'm not sure what the legal support for that is. Yeah, so if we're gonna interpret Rule 52 to just say you don't have to have any explanation at all, then the judge could, if you take it to the extreme, just say, I find that this party hasn't made out their claim, so they lose. How about I listen to the evidence, I look them in the eye, and upon observing their testimony, I don't believe them? Yeah. Which is what juries do all the time in cases, and juries don't even have to make findings of fact. Juries can look people dead in the eye and say, I simply don't believe you. Yeah, and honestly, if the judge had wrote that, I think we'd have a much harder case here. Let's think about it. What the judge did write, he wrote a 21 page memorandum of decision and order, and said, upon consideration of the testimony and evidence presented, court hereby utters the following findings of fact, the conclusions of law, 21 pages, after an offense trial was conducted. Yeah, I mean, in fairness... You're wasting our time talking about this. Most of those 21 pages were written by defense counsel. Their findings of fact were pretty much adopted in full. But what I'm trying to say is that... I'm sorry, I might be cutting out. I don't wanna talk over you. It was written by Judge Reininger. He signed it on 21. Right, but before he wrote this document, he had the party submit proposed findings of fact, and it's largely... Well, and that's what the courts do time to time. And here, you've got a bench trial. Of course, you have no jury trial. This is the Court Claims Act case. There's no right to a jury trial. The statute calls for a bench trial. And you've got a bench trial. And so Judge Reininger was the fact finder, and he was the judge and jury, as they say. And that's the way the system works, these Court Claims Acts. Let me narrow, I guess, what I'm trying to say here, and make it a little bit easier. If a court decides to say the basis for their fact finding, and that basis is... I'm just surprised that you start off your argument by attacking the trial judge. That's why I think... Your Honor, I don't mean it as an attack, but I... It simply doesn't, as a plaintiff's lawyer, it doesn't make any sense to me. I think you cut out, so I'm not sure if I heard your question, but I'm not trying to attack anyone. What I'm trying to say is that we all have our biases, and we all judge things in different ways, and I'm kinda getting into it, but the reason that we can know that there's something more going on here, is that the judge explicitly said, I think that she's not credible because she didn't remember that post. And that's just clear error. That's just wrong. You can't just scout someone's entire case just because they don't have recollection of something 12 years ago. If... It's not... Hold on. But that's not fair to the trial judge, because it's not just because you don't remember it. It's that when confronted with something that, for all the world, looks like a Twitter post by you, you insist that it's not you, couldn't have been you, wasn't you. I mean, let's just posit that before I was a judge, I had a Twitter account too, that was my first name at, my last name. And as someone showed me a post that looked, for all the world, like a post from my account... And it's not even just that here, right? Because as I recall, the post in question was on a screenshot that showed a post that unambiguously was by her. Right? Right. So... So wait. So I have a screenshot that shows what appears to be my Twitter account, and it shows a post that I 100% wrote, because it's the post in which I complained about the very incident I'm suing about. And then, seemingly appended directly on top of that, is another post that I made. And it's not just I say I don't remember it. I insist that notwithstanding the fact that it looks for all the world like it's from my Twitter account, that it definitely wasn't me. So my client didn't testify it definitely wasn't me. The question was, do you remember making this post? And she said, I don't remember making it. And frankly, any attorney will tell their clients, if you don't remember something, don't let them bully you into saying that you do just because they make it seem like you must remember it. If the question is, did you probably make this post? She would have answered yes. But that wasn't the question. It was, do you recall making it? And that, the answer was honestly no. If we look at page 53 of the trial transcript, the answer she gave on line four is, quote, yeah, I can't recall writing anything. She's talking about these posts on line 16 of that page. I don't recall that. On 23, I don't recall. And the problem is, she kept getting badgered by this attorney who surprised her with this post that, and keep in mind, she's also a journalist. She's a writer, so she has thousands of social media posts. There's no way she could have possibly remembered every post that she wrote in her entire career. And to make a big deal out of her not remembering, not saying this definitely wasn't me, she didn't say that. She just said, I don't remember writing it. Can I ask you about a finding the district court made that you don't address that I have? So let's posit for the sake of argument that I think that at minimum, the district court used some loose language about mens rea and may well have been wrong about mens rea. But there's this finding the district court makes at J431. Quote, the evidence presented at trial conclusively demonstrated that the pat down of the plaintiff was objectively reasonable and proper. I don't read your brief to argue that that finding is clearly erroneous. And if that finding isn't clearly erroneous, why is that not completely fatal to a battery claim? Yeah, I mean, I think that it's kind of implied that that finding isn't valid because the findings that it was predicated on were. No, but I guess what I guess is, let's say only for myself and only for the sake of argument that I don't find your attacks on the district judge's credibility findings persuasive, but that I am potentially open to the argument the district court was wrong about the mens rea required for battery. But even if that's true, why wouldn't the finding that I just quoted you mean that any mistake about the legal mens rea requirement doesn't matter because the district court made an alternative factual finding that would be absolutely fatal to a battery claim? Yeah, that's kind of why I started my argument with the factual finding, because I think that's what needs to be, uh, can be clarified in oral argument. I think you're right that the error as to the mens rea is pretty apparent from, um, from reading the papers, and I don't think I'm gonna change your mind on that one way or the other at oral argument. But as the facts, you know, I can only be here to offer clarifications that weren't there in the documents, such as let me put it in a different way. If we were to The district court did not commit any clear error in its factual findings about what happened in the world. Is there any other argument besides that one that any error about the mens rea requirement would be harmless error because of the district court's alternative finding that this was objectively reasonable? You know, I think that there's some, um, mixing of the arguments. If you think that the person has hasn't, um, hasn't shown that they were touched inappropriately, then it's easier to kind of combine those two things together. And we see a little bit of blending of facts and and, uh, legal conclusions in the documents. So I guess, uh, if if we are to conclude that she was definitely my client was definitely touched in accordance with TSA procedures, then know that the case is over and we don't have anything. Um, but I think one can say, Look, this this judge was wrong on the law on this, and that may have affected his decision making on the facts. Um, I think that you might be able to go and and take another look at it. So I'm a little confused with the stream of consciousness here. There there is a finding, as Judge Highton's, uh, represented that the touching was objectively reasonable. And I don't hear you saying that you have challenged that finding other than collaterally, because you say that the district court judge was so biased that it had to be an erroneous finding because of that. So the bias comes in where the judge discounted my client's testimony entirely. So my client testified that she was touched in a way that was not in accordance with TSA procedures, that they used the front of their hands to place them directly onto her genital area, which is not a part of the pat down there, right? All that's trial evidence. So you have the district court judge saying this was objectively reasonable, and it's your obligation on appeal to say, Okay, that's wrong, and here's why it's wrong. So what I'm asking is, where do you do that? Right. So if the court said in this thing, um, look, let's say your client does show that she was touched that way, it's still objectively reasonable, then we would have an improper determination of law. But I think the issue here is that the district court rejected that my client was touched as we alleged she was And that's the core. If she was touched in the way we alleged she was touched, there's little dispute that she was touched unreasonably. But because the court found that she was not credible, it found that she wasn't touched that way, and it found that it was reasonable. Um, I see I'm over time. I have time for rebuttal. Do you say some time, Mr Corbett? Mr Back. Yes, Your Honor. Yes, Your Honor. Mr Mr Beck, we can only see you from the eyes up. At least that's all I can see. See if I can adjust this.  All right. That's better. Okay. I'm sorry. I'm sorry. Um, my name is Gil Beck. I am an assistant United States attorney. I'm representing the United States. This case was primarily about finding the fact credibility determination. The trial judge had the opportunity firsthand to listen to the testimony to view the evidence and determined that Officer Robinson was credible and that the plaintiff was not. In addition to the point that has been made with regard to conclusion of Law 18, that the TSA conclusively following the TSA procedures conclusively demonstrated that the pat down of the plaintiff was objectively reasonable and proper. Another way that the court can find are affirmed. The district court is based on finding a fact number 55 in finding a fact number 55. The court say the plaintiff failed to prove by preponderance of evidence that LTS Robinson placed her hands on the plaintiff's bare five inserted her hand inside the bottom of plaintiff's shorts or used the front of her fingertips while searching the plaintiff's genital area. Not necessary to get to the intent. Although we're prepared to address the intent issue, the district court's findings is do, um, the highest level of a pair of pellet deference and where there are two competing, um, use of evidence. The fact finder's choice between those two competing areas can almost never be clearly erroneous. Council. What I understand opposing counsel to argue I may be incorrect here, but my understanding was that even if you these factual findings that they're invalid, for lack of a better word, because there's some implicit bias on the part of the district judge, is you have a response to that? Yes, sir. First, I don't think there's any basis whatsoever with regard to that. And then second, with regards to the findings of the district court judge, there are many findings that, uh, explain the district court judges finding his reasoning and the thought process. For example, the district court judge found that Osmond's testimony was not credible about her statement. Officer Robinson made comment about the shortness of her source. That's at page 4 23 of the joint appendix. The district court also found that Osmond was not credible when she allegedly said that officer Robinson said, If you resist, then I'll do it again, meaning search you again. That's a joint appendix for 23. The district court found also that Robinson, uh, that Osmond was not credible when she testified that Robinson allegedly placed her hands on the plaintiff's bare thigh. That's joint appendix 4 24. The district court found that Osmond was not credible when she alleged that Robinson inserted her hands in the bottom of plaintiff short joint appendix 4 24. The district court found that Osmond was not credible when she, uh, testified that officer Robinson used the front of her finger tips while searching the plaintiff's performing the pat down joint appendix 4 24. The record is thorough, complete with many explanations based on the testimony of the trial court that explained his decision. There is no indication that implicit bias influence, uh, the district court's decision and the court's decision should be affirmed. Can I ask you again whether this matters or not? Given this finding that there was no objectively offensive touching bracket that assume I will assume that your response to every single question about to ask would include and none of this matters because let's posit that I understand the and none of this matters because, um, so I first want to make sure if we under if we agree on what the men's rare requirement is. So let's say the evidence shows that the screener in fact touched a certain part of the plaintiff's body and that the screener in fact intended to touch that part of the plaintiff's body, right? Like it's not like I went into reach in an attempt to touch your arm and then because you moved, I ended up touching not your arm like I touched in place acts and I'm meant to touch in place acts, right? If if we establish that, do we agree the men's rare? Do you agree the men's rare element is satisfied? As long as we establish the screener meant to touch that particular part of the plaintiff's body? No, Your Honor. Um, under North Carolina law, uh, the liability for intentional sport of battery hinges on the defendant's intent to cause a harmful or I understand there is some loose language in cases that say that, but there are also cases that break down and say that's not like there are like this is towards 101. It is not a defense to battery to say, I know I did X and I meant to do X, but I subjectively don't believe that what I did was offensive. That's not a defense and battery. Yes, Your Honor. Um, but under North Carolina law, there is in effect the requirement to do more than just the intent to make contact. So it's not saying that's why I gave you the example where I meant I did mean to. I mean to touch the plaintiff's arm and I accidentally touch a specific a significantly more intimate private part of the plaintiff's body than the arm that I meant. So I agree. It's not just enough that I meant to touch them somewhere and that I ended up touching them somewhere. It was offensive. So the hypo I'm giving you is I meant to touch them precisely where I touched them. And what I don't understand is what more is required. And this is where I think the district court is wrong because I read the district court saying the T. S. A. Screener didn't mean to be offensive, and I just don't think that's an element of a battery. The intent under North Carolina law, which in the case of Andrews versus Peters applies the restatement. Second, of course, is the intent to cause the consequences off the act, which is the offensive touching in this particular case. So there is a requirement to touch with the intent of that touch being offensive. And what case says you claim it's Andrews that says that Andrews versus Peters rush versus great American insurance companies. Bread versus hate. This is an area you would have to the the defendant would intent, as Judge Heintz puts it, to touch place X. But wouldn't it be an objective test as to whether a reasonable person would find that touching a place X to be offensive? It really wouldn't matter what the defendant's state of mind was other than that they meant to touch that particular place. Correct, Your Honor. With regard to defining offensive, that is an objective standard. Correct. This is an area I think it'd be it'd be fair to say that there's you could you could cite some North Carolina cases both ways. But as a general proposition, it's not a subjective. It's not a defendant's subjective mens rea to the effect of the touching, but an objective test. If I understand the question correctly, the definition of what is offensive is determined by an objective test. The intent of the alleged court seizure includes a subjective component of intending to cause a harmful or offensive contact. I guess I'm just saying I'm looking at Andrews now and I'm looking at the point where they block quote Prosser and Keaton on torts, which is, you know, pretty close to the gold standard of what the common law of torts is. And this is the block quote that goes from 640 to 641. And it says, the intent with which tort liability is concerned is not necessarily a hostile intent or an intent to do harm. Rather, it is intent to bring about a result which will invade the interests of in a way the law forbids. Not that I intend to invade their interests in a way the law forbids. It will do that. And then this is the part that seems really important to me. The defendant may be liable, although intending nothing more than a good natured practical joke, or honestly believing that the act would not injure the plaintiff, or even seeking the plaintiff's own good. None of those are a defense to a battery claim. If I intentionally do something that is, in fact, on non consented to an offensive, it doesn't matter that I didn't think it was offensive, right? Your Honor, I believe the Andrews vs. Peters case. I'm literally quoting from Andrews vs. Peters right now. So if we look at the facts in that case, the defendant said, I didn't mean to hurt this person. What the defendant did was come up behind a co-worker and basically placed his knee into the back of the knee of the plaintiff, causing her to fall, break her kneecap, have very severe injuries. The defendant's defense was slightly different than the way you are articulating. The defendant's defense was, I was playing around. I didn't mean to cause harm. I tried to touch her, but he had the intent to commit an offensive contact. That is the key with regard to Andrews vs. Peters. He intended, no, sorry, again, I don't understand why you're fighting me on this, because I'm literally looking at Andrews right now on page 641, where the court literally says he does not deny that he intended to tap her knee. And the court says he doesn't deny that he intended to tap her knee. And it says tapping her knee is offensive as a matter of North Carolina tort law. And what the Supreme Court of North Carolina says, once I know he intended to tap her knee, and that tapping her knee is in fact offensive, dunzo, nothing else about what he intended or wanted makes any difference whatsoever at that point. The difference, I believe, is if you look at Andrews vs. Peters, where it's I'm reading Andrews vs. Peters. Yes, sir. I mean, I recognize that liability for the intentional force of battery engines on the defendant. I know there is one broad sentence that you keep quoting, but then I am reading the part where the court explains the outcome of that decision, and their explanation for their decision is he meant to touch her knee. He did touching her knee. Touching someone's knee without consent is offensive. Ergo, that's a battery. And counsel, you realize that you could concede this point, but you could still prevail. Yes, your honor. But I believe it's an important point, and I recognize the points that are being made, but I believe it is an important point because North Carolina has preserved in its common law the common law requirement of a subjective intent to cause harmful or offensive conduct. If this issue were dispositive, and if we were in any other state but North Carolina, we could certify the question, but I would represent to you that this is not dispositive, and that regardless of what we decided, if we were deciding this particular point, no state North Carolina court would be required to give it any deference. Yes, your honor. I recognize that, and I totally agree that the case can be affirmed on the failure of the plaintiff to prove the offensive or harmful contact. I don't mean to belabor the point with regards to intent. If the court has no further questions, that includes a couple. How in the world does the federal government as a defendant misspell the name of its own employee and assert that you don't know where they live? First of all, I will take responsibility, and I could have done better, but I went on the information that I received when I made the initial disclosures, and I provided all of that information to the plaintiff. When I made this first supplemental, I did the same. All the information I had, I provided to the plaintiff. And when I made a second supplemental disclosure, the same thing. So I provided all the information that I had. The district court found that that wasn't adequately representing that someone else gave you information that misspelled an employee of the federal government's name. Your honor, in retrospect, I agree completely that I could have done better. I was not aware of that. I provided all the information I have, but I recognize your point, and I wish I had done that. All right, let me ask another question. Then I don't understand. As a matter of federal rule of evidence, 404 how the fact that there had been complaints against this person in the past isn't improper character evidence that's barred by rule 404. Um, first of all, there was no objection to that testimony. Um, and,  to the extent there was no objection, what material fact is made more or less likely by the fact that this person hadn't had previous complaints except the inference that because there hadn't been complaints in the past, she might not must not have been bad in the past. And because she was not bad in the past, she must not have been bad here, which is literally the very inference that 404 says you can't draw with regard to that. It was part of the overall this description of this particular E. S. A. Springer was very conscientious, was very dedicated, was very professional, and it was part of that composite picture. If the objection had been made, then the court doesn't at all presuppose that the fact that she was conscientious and careful and didn't subjectively want to hurt the plaintiff is legally relevant in the first place. Correct. But if it's not all that testimony becomes improper to right. I'll comment that since this was a bench trial, most judges that I've dealt with in bench trials don't pay much attention to the rules of evidence. They want to hear whatever they can hear, and they can figure out what to consider and what weight to put on it. Anyway, the rules of evidence are not enforced in bench trials. And certainly the trial judge knew what weight to put on that evidence. Even taking aside all of that, there was ample evidence to support the district court judges proceedings. And if there are no further questions, that will conclude my remarks. Thank you. We would ask that the court affirm the district court. Thank you. Thank you, Mr. Beck. Mr. Corbett, you've got some time. Thank you, Your Honor. I want to start by clarifying that my point is not that even if all the judge's conclusions of fact are correct, that it should still be overturned by some kind of tangential bias. The idea is that these determinations of fact are inaccurate because of prejudging. And part of it is, if I can move on to the evidence which seems to interest the court a little bit more, part of it is that the evidence that came into it was oftentimes things that should not have come in. And I think that the court should, it would be wonderful if the court could recognize that the adage that a judge in a bench trial can hear everything and just exclude everything that isn't relevant, like a robot, and everything is no harm, no foul, I think should start to be rejected. I don't think that one can say it's no harm, no foul to take in all this evidence, to take in evidence of how an allegation made the defendant feel. To take in a TSA screener who testified how 9-11 made him proud to be a TSA employee over objection. All of this evidence came in to make it seem as if this group of people was professional and on it and doing their best, and all of these things were not necessarily relevant. And that is going to color a judge's perspective even if they say it won't. And to tie this back to where I started this, when a judge says, I determined that someone isn't credible, and then gives a reason, if that reason was because witnesses who testify on Tuesdays aren't believable, the court would obviously say, well that's clear error. And I'm asking the court to go a little bit further than that, obviously, but to say, look, a person saying, I don't recall a Twitter post from 12 years ago, if that is truly the basis for your decision that they're not credible, then you've made clear error. So I'm not trying to speak of bias in the abstraction. I'm certainly not trying to attack the district judge at all. But all of this came into this court, and we expect judges to separate it out, and it just doesn't work like that in the end. In the end, we don't know why the court made some of these determinations, and some of them were, in my view, clearly wrong. For example, others were countered by evidence on video. There's, there's video evidence in there that clearly shows that this screener is using the front of her hands to touch, to pat down the genital area of my client. And the court adopted the proposed refining effect of the defendant that the hands were probably just floating there, not actually touching. Now that's, to me, that's, that's, that's turning a blind eye because it's, it's, it's finding a way to explain what you've already concluded, rather than trying to use the facts that are in front of you to make a conclusion. So in, in the absence of some kind of reason to think that my client wasn't test, wasn't credible, and I watched her eyes and, and thought she was lying would be a much better reason than she didn't remember a Twitter post, to, to, to your Honor's point. But that wasn't the one that we were given. We were given all these other reasons, and in the findings of fact, we were given probably half a dozen findings of fact that the court later said, I'm not taking this into consideration. And the question I would, would have is, why would a court find something as a fact, if it's then gonna say that's irrelevant? I, I think in, in this context where the judge says that the testimony was not credible for a reason that's just strange credulity, and then says, all these other facts, by the way, were true, but I didn't take them into account. I think the court really needs to analyze a little bit deeper into what actually led to this. And look, I, I realize I'm making an uphill battle. I, I, I understand that, that asking for a reversal of a judge's determination of credibility is, is, is the highest of hills that I could come here on an appeal for. But in light of all this bad evidence that came in and the reason given, I, I think there's some reason for the court to actually take a little bit further of a look and, and see if it actually makes sense. If no further questions, I'll yield my time. Thank you, Mr. Corbett. Thank you. That, we will take the, this appeal under advisement. And that being the final appeal of the day, Madam Clerk, we will adjourn court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Robert B. King, G. Steven Agee, Toby J. Heytens